# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

MARK FREDERICK JORDAN,
      Petitioner,

v.                            Case No.  3:09cv227/LC/CJK

KENNETH S. TUCKER,[1]
      Respondent.

_____

## ORDER and
## REPORT AND RECOMMENDATION

Before the Court is a petition for writ of habeas corpus filed under 28 U.S.C. § 2254. (Doc. 1). Respondent filed an answer, submitting relevant portions of the state court record. (Doc. 10). Petitioner replied. (Doc. 15). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After careful consideration of all issues raised by petitioner, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter. Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts. The undersigned further concludes that the pleadings and attachments before the Court show that petitioner is not entitled to federal habeas relief, and that the petition should be denied.

## BACKGROUND AND PROCEDURAL HISTORY

On August 2, 2005, petitioner was found guilty by jury verdict of second degree murder with a firearm, in the Circuit Court of Escambia County, Florida, Case

_____

[1]Kenneth S. Tucker succeeded Edwin G. Buss as Secretary of the Florida Department of Corrections, and is automatically substituted as the respondent. Fed.R.Civ.P. 25(d).

Number 04-3787.  (Doc. 10, Attach. 8, Ex. I).[2]  Petitioner was adjudicated guilty and sentenced on October 27, 2005, to fifty years imprisonment with twenty years suspended as probation.  (*Id.*, Ex. K).  Petitioner appealed, raising one issue:  That the evidence was legally insufficient to sustain petitioner's conviction, because the evidence proved self-defense as a matter of law.  (Attach. 9, Ex. M).  The Florida First District Court of Appeal ("First DCA") per curiam affirmed on July 10, 2007, without written opinion. *Jordan v. State*, 959 So.2d 721 (Fla. 1st DCA 2007) (Table) (copy at Attach. 10, Ex. P).

On February 21, 2008, petitioner filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, raising twelve grounds.  (Attach. 10, Ex. Q).  The state court denied relief without an evidentiary hearing.  (Attach. 11, Ex. R).  The First DCA per curiam affirmed without written opinion on April 23, 2009. *Jordan v. State*, 7 So.3d 538 (Fla. 1st DCA 2009) (Table).  The mandate issued May 19, 2009.  (Attach. 13, Ex. T).

Petitioner filed his federal habeas petition in this Court on May 27, 2009. (Doc. 1).  The petition raises one ground for relief:  that petitioner's trial counsel was ineffective for failing to move to suppress petitioner's statements to police and evidence seized from petitioner's home on the grounds that the evidence was the product of petitioner's illegal detention, invalid consent to search, and invalid confession. (Doc. 1, pp. 4-4A).  Petitioner asserts that he raised this claim in his Rule 3.850 proceeding.  (*Id.*).  Respondent argues petitioner's claim is procedurally defaulted, because petitioner's Rule 3.850 motion did not raise any claim concerning counsel's failure to move to suppress petitioner's statements based on a "lack of

---

[2]Hereafter, all references to exhibits are to those provided at Doc. 10, unless otherwise noted.

advisement of Constitutional rights." (Doc. 10, pp. 8-9). In the alternative, respondent argues that the language petitioner uses to present his federal habeas claim is taken largely verbatim from "Claim One" of petitioner's Rule 3.850 motion, and if it is petitioner's intention to offer the same claim for federal habeas relief that was adjudicated as "Claim One" in the Rule 3.850 proceeding, petitioner should be denied federal habeas relief on the merits. (*Id.*, p. 10). Petitioner clarifies in his reply that he is seeking federal habeas relief on the same claim that was adjudicated on the merits as "Claim One" in his Rule 3.850 proceeding. (Doc. 15, p. 2 (citing Ex. Q, pp. 17-22 and Ex. R, p. 41)). In light of petitioner's clarification and the Court's own review of the Rule 3.850 record, which is provided in more detail below, the Court construes petitioner's federal habeas petition as raising the same ineffective assistance of counsel claim presented, and adjudicated on the merits, as "Claim One" and "Claim Five" of petitioner's Rule 3.850 motion. This conclusion disposes of respondent's procedural default argument.

DISCUSSION

Standard of Review

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. Section 2254(d) provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved

>an unreasonable application of, clearly established Federal law,
>as determined by the Supreme Court of the United States; or
>
>(2)   resulted in a decision that was based on an
>unreasonable determination of the facts in light of the evidence
>presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3] The appropriate test was described by Justice O'Connor as follows:

>Under the "contrary to" clause, a federal habeas court may grant the writ
>if the state court arrives at a conclusion opposite to that reached by this
>court on a question of law or if the state court decides a case differently
>than this Court has on a set of materially indistinguishable facts.  Under
>the "unreasonable application" clause, a federal habeas court may grant
>the writ if the state court identifies the correct governing legal principle
>from this Court's decisions but unreasonably applies that principle to the
>facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538

---

[3]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. *Thaler v. Haynes*, — U.S. —, 130 S. Ct. 1171, 1173, 175 L. Ed. 2d 1003 (2010); *Bowles v. Sec'y for Dep't of Corr.*, 608 F.3d 1313, 1315 (11th Cir. 2010).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim. *See Panetti v. Quarterman*, 551 U.S. 930, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007).

If the state court decision is not contrary to clearly established federal law, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court. *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737-38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*,

535 U.S. 685, 697 n. 4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002)
(declining to consider evidence not presented to state court in determining whether
its decision was contrary to federal law).  An objectively unreasonable application of
federal law occurs when the state court "identifies the correct legal rule from Supreme
Court case law but unreasonably applies that rule to the facts of the petitioner's case"
or "unreasonably extends, or unreasonably declines to extend, a legal principle from
Supreme Court case law to a new context."  *Putman v. Head*, 268 F.3d 1223, 1241
(11th Cir. 2001).  A state court, however, may "decline to apply a specific legal rule
that has not been squarely established by [the Supreme Court]" without running afoul
of the "unreasonable application" clause.  *Knowles v. Mirzayance*, 556 U.S. 111, 129
S. Ct. 1411, 1419, 173 L. Ed. 2d 251 (2009).

When faced with a state appellate court's summary affirmance of a trial court's
decision, the "unreasonable application" standard focuses on the state court's ultimate
conclusion, not the reasoning that led to it.   *See Gill v. Mecusker*,  633 F.3d 1272,
1287 (11th Cir. 2011) (citing *Harrington v. Richter*, — U.S. —, 131 S. Ct. 770, 786,
178 L. Ed. 2d 624 (2011)).  The federal court  must determine what arguments or
theories supported or could have supported the state court's decision, and then ask
whether it is possible that fairminded jurists could disagree that those arguments or
theories are inconsistent with the holding in a prior Supreme Court decision.  *See
Richter*, 131 S. Ct. at 786; *see also Gill*, 633 F.3d at 1292 (holding that the federal
district court may rely on grounds other than those articulated by the state court in
determining that habeas relief was not warranted, so long as the district court did not
err in concluding that the state court's rejection of the petitioner's claims was neither
an unreasonable application of a Supreme Court holding nor an unreasonable

determination of the facts).  In sum, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  As with the "unreasonable application" clause, the federal court applies an objective test.  *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.").  The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  *See Gill*, 633 F.3d at 1292.

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct.  28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  *Id.*; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").  Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and §2254(e)(1) interact in the

context of fact-based challenges to state court adjudications.  *Cave v. Sec'y for Dep't of Corr.*, 638 F.3d. 739 (11th Cir. 2011).  However, the Eleventh Circuit recently declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision."  *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  *See Panetti*, 551 U.S. 930, 127 S. Ct. 2842, 2858.  Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).  "If this standard is difficult to meet, that is because it was meant to be."  *Richter*, 131 S. Ct. at 786.

Within this framework, the court will review petitioner's claim.

Ground 1

Petitioner claims trial counsel was ineffective for failing to move to suppress his statements to law enforcement and physical evidence seized from his residence. (Doc. 1, p. 4-4A).  Petitioner proposes two bases for suppression.  First, counsel should have argued that petitioner's statements and the seized evidence were subject to suppression because they were the product of petitioner's illegal seizure and detention – specifically, petitioner was handcuffed and secured at the scene in a patrol car without probable cause and without being advised of his constitutional rights, and

was further detained at the jail without probable cause.  (Doc. 1, pp. 4-4A; Doc. 15).  Petitioner presented this aspect of his claim as "Claim One" in his Rule 3.850 motion.  (Doc. 10, Attach. 10, Ex. Q, pp. 18-22).  Second, petitioner asserts counsel should have argued that petitioner's statements to law enforcement and the evidence seized from his home were subject to suppression because petitioner was intoxicated when he made the statements, and could not provide a valid *Miranda*[4] waiver or consent to search.  (Doc. 1, p. 4A; Doc. 15).  Petitioner presented this aspect of his claim as "Claim Five" in his Rule 3.850 motion.  (Doc. 10, Attach. 10, Ex. Q, pp. 26-29).  Petitioner argues that counsel's conduct prejudiced him because his comments and recorded statements, and the items seized from his home were introduced as evidence against him at trial and constituted the "entire basis" for his conviction.  (Doc. 1, p. 4A).  Because both aspects of petitioner's claim were presented to and ruled upon by the state court, respondent's procedural default argument should be rejected, and petitioner's claim reviewed under § 2254(d).

A.      Clearly Established Federal Law

"To obtain relief where an ineffective assistance claim is based on trial counsel's failure to file a timely motion to suppress, a petitioner must prove (1) that counsel's representation fell below an objective standard of reasonableness, (2) that the Fourth Amendment claim is meritorious, and (3) that there is a reasonable probability that the verdict would have been different absent the excludable evidence." *Zakrzewski v. McDonough*, 455 F.3d 1254, 1258, 1260 (11th Cir. 2006) (citing *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and *Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S. Ct. 2574, 2582-83,

---

[4]*Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

91 L. Ed. 2d 305 (1986)).

"The purpose of ineffectiveness review is not to grade counsel's performance." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (citing *Strickland*). In evaluating counsel's performance, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable, professional assistance. *Chandler* at 1314. Courts must make "every effort . . . to eliminate the distorting effects of hindsight" and must evaluate the reasonableness of counsel's performance "from counsel's perspective at the time." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065; *see also e.g., Chandler* at 1314 (explaining that the *Strickland* standard compels courts to "avoid second-guessing counsel's performance").

In order to meet the prejudice prong of the *Strickland* standard, petitioner must allege more than simply that counsel's conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693, 104 S. Ct. at 2067. Instead, the petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*, at 694, 104 S. Ct. at 2068. Without support in the record, bare allegations that the petitioner was prejudiced by counsel's performance are not sufficient. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987).

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *Strickland*, 466 U.S. at 698, 104 S. Ct. at 2070; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999). "Surmounting *Strickland*'s

high bar is never an easy task." *Padilla v. Kentucky*, — U.S. —, 130 S. Ct. 1473, 1485, 176 L. Ed. 2d 284 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 131 S. Ct. at 788. As the *Richter* Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id*. (citations omitted).

> B.    State Court Record

On August 19, 2004, Escambia County Sheriff's Deputy Greg Nesmith was dispatched to petitioner's trailer at 4:48 a.m., in reference to a possible death investigation. (Doc. 10, Attach. 2, Ex. A and Attach. 3, Ex. H, p. 22-23). As Deputy Nesmith approached petitioner's trailer, he observed petitioner on the porch drinking a beer. (*Id*., Attach. 3, Ex. H, p. 22). Nesmith called to petitioner and asked him if he had called the Sheriff's Office. (*Id*., p. 23). Petitioner responded, "Yes, I just shot. . . ." Deputy Nesmith was unable to clearly understand the rest of petitioner's response. (*Id*.). Deputy Nesmith asked petitioner to lay the beer down on the porch and get down on the ground. (*Id*.). Deputy Nesmith approached petitioner and secured him. (*Id*.). Nesmith could see through the open door to petitioner's trailer that there was a white male on his knees in a crouched position lying over into the seat of a recliner. (*Id*., pp. 23-24). Deputy Nesmith went inside to check on the man.

(*Id*.).  There was a puddle of blood on the floor on the victim's right, and the victim appeared to be deceased.  (*Id*.; *see also* Doc. 10, Attach. 2, Ex. A).  Deputy Nesmith saw a pistol inside a holster lying on a table in the area near the victim.  (*Id*.).  Deputy Nesmith and two officers performed a protective search of the trailer to ensure there were no other suspects or victims inside the trailer.  (*Id*.).  Nesmith placed petitioner in the back seat of his patrol vehicle.  (*Id*.).  As Nesmith was placing petitioner in the vehicle, petitioner stated, "I shot that son-of-a-bitch, he broke into my house." (*Id*., p. 25).  Nesmith did not see any signs of forced entry into petitioner's trailer.  (*Id*.). Later, when Nesmith was transferring petitioner into a different patrol car, petitioner stated to Nesmith, "We both fucked up, and I guess I got that son-of-a-bitch." (*Id*., p. 26).  EMS arrived on the scene and pronounced the victim dead.  (Doc. 10, Attach. 2, Ex. B, p. 7).

Deputy Terry Kilgore, an investigator with the Escambia County Sheriff's Office, arrived at the scene at 5:56 a.m.  (Doc. 10, Attach. 4, Ex. H, p. 69).  Kilgore made contact with petitioner and observed that petitioner appeared to have been drinking.  (*Id*.).  At 6:07 a.m., Investigator Kilgore advised petitioner of his *Miranda* rights.  (*Id*.; *see also* Attach. 2, Ex. B, p. 7).  Petitioner waived his rights and also signed a Consent to Search form, consenting to the search of his trailer home.  (Doc. 10, Attach. 4, Ex. H, pp. 69-70; *see also* Attach. 2, Ex. B, pp. 7, 10).  Petitioner was transported to the Sheriff's Department.  (Doc. 10, Attach. 4, Ex. H, p. 70).  At 8:40 a.m., Investigator Kilgore took a recorded statement from petitioner.  (*Id*.).  Kilgore began by reading petitioner his *Miranda* rights from the form he had used at the scene.  (*Id*., pp. 70, 73, 75; *see also* Attach. 2, Ex. F).  The form included a waiver section, which Kilgore read.  (*Id*., p. 75).  Petitioner had previously signed the waiver

form, and Investigator Kilgore asked petitioner if that was petitioner's signature on the waiver. (*Id*.). Petitioner acknowledged his signature. (*Id*.). During the interview petitioner admitted shooting the victim and explained the circumstances surrounding the shooting. (*Id*., pp 75-88; *see also* Attach. 2, Ex. F). Petitioner stated that he had consumed approximately a case of beer (24 beers) before the shooting, and possibly taken some Valium. (Attach. 4, Ex. H, pp. 79, 93, 101, 107; *see also* Attach. 2, Ex. F).

At 11:05 a.m., Deputy Don "Buddy" NeSmith filed an Affidavit for Search Warrant for petitioner's trailer home and truck. (Doc. 10, Attach. 2, Ex. B, pp. 6-10). Deputy NeSmith related the following facts in support of the search warrant:

> On August 19, 2004, at 0443 hours, Escambia County Sheriff's Office responded to a 911 call for assistance at 527 A Boyette street, in Escambia County, Florida. Upon arrival, Escambia County Sheriff's Office Deputy Greg NeSmith, #213, found a white male, who was later identified as Mark Frederick Jordan, who stated "yes, I just shot . . .", but was unable to clearly understand what the W/M said after that. Deputy Greg NeSmith observed the while [sic] male holding a beer, and advised the white male to place the beer on the ground. The white male was placed in Deputy Greg Nesmith's patrol vehicle. From outside the trailer through the open door, Deputy NeSmith could see an unidentified white male in a crouched position on a recliner seat chair in the living room area of the trailer. There was a puddle of blood on the floor to the victim's right and the victim showed no visible signs of life. Sgt. Ken Simmons and Deputy Darren Robinson did a protective sweep of the trailer and found that there were no other persons inside the trailer. Deputy Greg NeSmith noticed a revolver, which was inside a nylon holster lying on top of a stand in the living room area where the victim was.
>
> EMS arrived on the scene and the victim was pronounced dead. At 0556 hours, Investigator Terry Lee Kilgore arrived at the scene and

made contact with the suspect, Mark Frederick Jordan, and advised him
of his Miranda Rights at 0607 hours.  Also at this time, Consent to
Search was obtained from Mark Frederick Jordan for the trailer.  Due to
Mark Frederick Jordan's condition, a copy of this Consent to Search
Form will be attached to this affidavit (Attachment #2).

(Doc. 10, Attach. 2, Ex. B, p. 7).

At 11:15 a.m., Investigator Kilgore had petitioner's blood alcohol level tested.
(Attach. 4, Ex. H, p. 70).  Petitioner's blood alcohol level was .17.  (*Id*.).  Investigator
Kilgore took petitioner into protective custody under the authority of the "Marchman
Act," Fla. Stat. § 397.301 *et seq*., and had petitioner taken to the county jail.  (Attach.
5, Ex. H, pp. 95, 116-17).

At 6:20 p.m., after petitioner's blood alcohol level had dropped to below .03,
Investigator Kilgore took a second recorded statement from petitioner.  (Attach. 4,
Ex. H, pp. 70-71, 88; Attach. 2, Ex. E).  Investigator Kilgore began by advising
petitioner of his *Miranda* rights from a form.  (Ex. H, p. 90 and Ex. E).  Kilgore read
petitioner the waiver section of the form and asked petitioner if he understood
everything Kilgore had read to him.  (*Id*., p. 91 and Ex. E).  Petitioner acknowledged
that he understood everything and signed the waiver.  (*Id*.; *see also* Doc. 10, Attach.
2, Ex. D).   Petitioner confessed to shooting the victim and explained the
circumstances surrounding the shooting.  (Doc. 10, Attach. 2, Ex. E and Attach. 4, Ex.
H, pp. 91- 97 through Attach. 5, Ex. H, pp. 98-114).  Petitioner was arrested after the
interview.  (Doc. 10, Attach. 2, Ex. A).

All of petitioner's statements were admitted at petitioner's trial, without
objection.  Petitioner's defense was self-defense.  Petitioner did not testify, and relied
on his recorded statements to support his defense.

C.     State Court Decision

The Rule 3.850 denied relief.  The court identified *Strickland* as the controlling legal standard.  (Doc. 10, Attach. 11, Ex. R, p. 41).  In addressing "Claim One," the Rule 3.850 court rejected petitioner's contention that counsel should have moved to suppress petitioner's statements and physical evidence on the grounds that petitioner's seizure and detention were illegal.  The Rule 3.850 court explained:

> In the instant motion Defendant concedes that as Officer Nesmith initially approached the scene, Defendant stated with slurred speech, "I just shot," followed by something unintelligible.  Officer Nesmith further testified at trial that the front door of Defendant's mobile home was open and that he could see the victim on his knees crouched over on a recliner.  Officer Nesmith told Defendant to set down his beer and get on the ground.  After verifying that the victim was dead, the officer observed a pistol on a table nearby.  Subsequently, the mobile home was checked for any other victims or suspects, and then Defendant was placed into a patrol car.  Officer Nesmith testified that as he was putting the Defendant into the car, Defendant said "I shot that son-of-a-bitch, he broke into my house."  Defendant was subsequently moved to a different patrol car, at which time he stated, "we both fucked up, and I guess I got that son-of-a-bitch."

> A reasonably prudent person would make a rational inference in this situation that Defendant was intoxicated and that he shot the victim.  The officers had a reasonable concern for safety that justified Defendant's being placed into a patrol car.  Therefore, the detention was not an [sic] unlawful and would not warrant suppression of any statements or evidence.

> Furthermore, Defendant was detained and held at the jail pursuant to sections 397.677 and 397.675(2)(a), Florida Statutes.  "A person meets the criteria for involuntary admission [including protective custody] if there is a good faith reason to believe the person is substance abuse impaired and, because of such impairment:  Has inflicted . . .

physical harm on . . . another."  The facts described *supra*, support a good faith belief that Defendant was impaired and had inflicted physical harm on another, because he was slurring, was drinking a beer, stated that he was "fucked up" and admitted shooting the victim.  Therefore, Defendant was properly held in protective custody at the jail.  His detention was not unlawful or in violation of his constitutional rights.

As a motion to suppress on the basis of any unlawful detention of Defendant was not warranted, counsel was not deficient for failing to file such a motion.  Moreover, as such a motion would not have been granted, Defendant was not prejudiced by the failure to file a motion to suppress.  Defendant is not entitled to relief on this claim.

(Doc.10, Attach. 11, Ex. R, pp. 42-44) (footnotes omitted).

The Rule 3.850 addressed petitioner's argument concerning his intoxication and its effect on his statements and consent to search in "Claim Five" as follows:

Defendant claims that trial counsel should have argued to suppress Defendant's actions and statements to police as involuntary due to his intoxication.  To determine if such a motion was warranted the Court must consider the probability that the motion would be granted, thus affecting the outcome of the proceedings.  See Kormondy v. State, 983 So. 2d 418, 430 (Fla. 2007) (trial counsel cannot be deemed ineffective for failing to argue a nonmeritous motion to suppress).

"The rule of law seems to be well-settled that the drunken condition of the accused when making a confession, unless such drunkenness goes to the extent of mania, does not affect the admissibility in evidence of the confession, but may effect its weight and credibility with the jury."  Lawson v. State, 884 So. 2d 540, 547 (Fla. 4th DCA 2004) (citations omitted).

Officer Kilgore testified that Defendant's blood alcohol level was taken before the first recorded statement, and registered as 0.17.  When the second recorded statement was taken, Defendant's blood alcohol

level was 0.03, which is under the legal limit to drive.  Even if trial counsel was able to prove that Defendant was so intoxicated that he was "manic," and all of Defendant's statements prior to the second recorded statement were suppressed, the second statement still contained Defendant's confession.  Therefore, it is not likely that the outcome of the proceedings would have been different.

Additionally, the jury had the opportunity to consider the amount of alcohol and drugs consumed by Defendant and were able to factor in his intoxication when considering the credibility of his statements.  Trial counsel was not deficient for failing to pursue a defense of voluntary intoxication as it is not a viable defense.  See Wilson v. State, 871 So. 2d 298 (Fla. 1st DCA 2004).

It is unlikely that a motion to suppress would have been granted on the basis that Defendant's statements and consent to search were involuntary due to his intoxication.  Therefore, counsel was not deficient for failing to file such a motion and Defendant cannot demonstrate prejudice by counsel's inaction.  Defendant is not entitled to relief on this claim.

(Doc. 10, Attach. 11, Ex. R, pp. 51-52) (footnotes omitted).  The state appellate court summarily affirmed the denial of relief.

C.      Federal Review of State Court Decision

The state appellate court reasonably could have concluded that counsel was not ineffective for failing to file a motion to suppress, because a motion to suppress on grounds of unlawful seizure and detention would not have succeeded.  The standard for evaluating the constitutionality of an investigatory detention is an objective one. Law enforcement officers may stop a person and detain him briefly in order to investigate a reasonable suspicion that  "criminal activity may be afoot."  *Terry v. Ohio*, 392 U.S. 1, 23, 30, 88 S. Ct. 1868, 1881, 1884-85, 20 L. Ed. 2d 889 (1968); *United States v. Powell*, 222 F.3d 913, 917 (11th Cir. 2000) (holding that a brief

investigatory detention is justified if the officer has "a reasonable, articulable suspicion based on objective facts that the person has engaged in, or is about to engage in, criminal activity."). "[R]easonable suspicion" has been described as "some minimal level of objective justification" taken from the totality of the circumstances. *United States v. Sokolow*, 490 U.S. 1, 7-8, 109 S. Ct. 1581, 1585, 104 L. Ed. 2d 1 (1989); *see also Terry*, 392 U.S. at 21, 88 S. Ct. at 1879 (describing "reasonable suspicion" as requiring "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [an] intrusion."). In addition to being justified at its inception, the investigatory detention must be "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 20, 88 S. Ct. at 1879; *Florida v. Royer*, 460 U.S. 491, 500, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983) ("[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time."). In the course of the investigatory detention, officers may secure the detainee for officer safety. *See, e.g., United States v. Holloway*, 290 F.3d 1331, 1340 (11th Cir. 2002) (officer safety demanded that officers – who were responding to a 911 call reporting gunshots – temporarily secure individuals present on the premises prior to conducting a search of the residence for victims); *see generally Michigan v. Summers*, 452 U.S. 692, 702-03, 101 S. Ct. 2587, 2594, 69 L. Ed. 2d 340 (1981) (holding that police officers executing in-home search warrant could detain occupant of premises during search based, in part, on potential risk of harm to officers).

Law enforcement officers have probable cause to arrest when, at the moment the decision is made, "the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been committed. *Carroll v. United States*, 267 U.S. 132, 162, 45 S. Ct. 280, 288, 69 L. Ed. 543 (1925). Additionally, under Florida law, a person may be taken into protective custody "if there is good faith reason to believe the person is substance abuse impaired and, because of such impairment . . . [h]as lost the power of self-control with respect to substance use" and "has inflicted . . . physical harm on . . . another." Fla. Stat. § 397.675.

The totality of the known facts and circumstances would have led a reasonable law enforcement officer in the position of Deputy Nesmith and Investigator Kilgore to believe not only that petitioner was intoxicated and had caused injury to another, but also that an unlawful killing of another human being had taken place and petitioner was the perpetrator. Thus, the state court reasonably could have concluded that a motion to suppress on grounds that petitioner's detention was illegal lacked merit, that defense counsel's failure to file a motion to suppress was not objectively unreasonable, and that petitioner was not prejudiced by counsel's failure to file a motion on petitioner's proposed basis of unlawful detention.

The state appellate court could also conclude, reasonably, that petitioner failed to establish prejudice stemming from counsel's failure to file a motion to suppress based upon petitioner's intoxication. "A confession that was not the product of free will and rationale [sic] intellect or that was made when the individual's will was 'overborne' by physical, psychological, or drug-induced means, is inadmissible."

*Parker v. Allen*, 565 F.3d 1258, 1280 (11ᵗʰ Cir. 2009) (quoting *Townsend v. Sain*, 372 U.S. 293, 307, 83 S. Ct. 745, 754, 9 L. Ed. 2d 770 (1963), *overruled on other grounds by Keeney v. Tamayo–Reyes*, 504 U.S. 1, 5, 112 S. Ct. 1715, 1717, 118 L. Ed. 2d 318 (1992)).  In Florida, "The mere fact that a suspect was under the influence of alcohol when questioned does not render his statements inadmissible as involuntary.  'The rule of law seems to be well settled that the drunken condition of an accused when making a confession, unless such drunkenness goes to the extent of mania, does not affect the admissibility in evidence of such confession, but may affect its weight and credibility with the jury.'"  *Thomas v. State*, 456 So.2d 454 (Fla. 1984) (quoting *Lindsey v. State*, 63 So. 832, 833 (1913)).  As to petitioner's capacity to execute a valid *Miranda* waiver, a waiver of *Miranda* rights must be voluntary, knowing and intelligent; and whether a defendant has waived his *Miranda* rights is evaluated based on the totality of the circumstances.  *United States v. Barbour*, 70 F.3d 580, 584-85 (11ᵗʰ Cir. 1995).

The state court found, and the record demonstrates, that petitioner was no longer intoxicated at 6:20 p.m., when he received new *Miranda* warnings and voluntarily spoke with Investigator Kilgore.  (Doc. 10, Attach. 2, Exs. D, E).  At the 6:20 p.m. interview, petitioner acknowledged his understanding of his *Miranda* rights and executed a formal waiver.  (*Id.*).  Petitioner also acknowledged that he had sobered up.  Petitioner responded appropriately and coherently to questions.  (Ex. E).  Petitioner's second recorded statement was just as incriminating, if not more, than his prior statements.  Petitioner admitted that he shot the victim and described the circumstances surrounding the shooting.  Based on the totality of the circumstances, the state court reasonably could have concluded that a motion to suppress petitioner's

second recorded statement would not have succeeded, and that petitioner failed to establish a reasonable probability that the result of his trial would have been different had counsel moved for suppression.

As to petitioner's consent to search, the record demonstrates that the search warrant was issued on the basis of Deputy Don Nesmith's affidavit. (Doc. 10, Attach. 2, Ex. C). Nesmith's affidavit related sufficient facts, independent of petitioner's consent to search, to establish probable cause for issuance of the search warrant. Accordingly, the state court reasonably could have concluded that a motion to suppress based on petitioner's invalid consent to search would not have succeeded.

## CONCLUSION

The state court's rejection of petitioner's claims was not contrary to, and did not involve an unreasonable application of, clearly established federal law. Nor was the state court's decision based on an unreasonable determination of the facts. Petitioner is not entitled to federal habeas relief.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473,

483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this term) (citation omitted).  Therefore, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is ORDERED:

The clerk shall change the docket to reflect that Kenneth S. Tucker has been substituted as respondent in this cause.

And it is respectfully RECOMMENDED:

1.   That the petition for writ of habeas corpus (doc. 1), challenging the conviction and sentence in *State of Florida v. Mark Frederick Jordan* in the Circuit Court for Escambia County, Florida, Case No. 04-3787 be DENIED, and the clerk be directed to close the file.

2.  That a certificate of appealability be DENIED.

At Pensacola, Florida this 26th day of January, 2012.

/s/ *Charles J. Kahn, Jr.*
CHARLES J. KAHN, JR.
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).